## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 07-14003-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

      **Plaintiff,**

v.

**MICHAEL ALLAN MCGEE,**

      **Defendant.**

_____/



FILED by _____ D.C.

SEP - 7 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON FINAL EVIDENTIARY HEARING
## IN RESPECT TO PETITION ALLEGING VIOLATION OF SUPERVISED RELEASE
## [D.E. 25, 27]

**THIS CAUSE** having come on to be heard for a final evidentiary hearing on September 7, 2016, in respect to the Petition Alleging Violation of Supervised Release and this Court having received evidence, testimony, and arguments of counsel, makes the following recommendation to the District Court:

    1.    The Petition [D.E. 25, 27] alleges one violation as follows:

> **Violation Number 1**    **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about June 21, 2016 in Seminole County, Florida, the defendant committed the offense of battery-touch or strike (domestic violence), contrary to Florida State Statute 784.03(1)(a)1.

    2.    The first witness called by the government was Deputy Blay-Raffo. Deputy Blay-Raffo is a member of the Seminole County Sheriff's Office and has been working with that department since 2014. She is a road deputy. On June 21, 2016 she was working and was dispatched to a residence in Seminole County, Florida. The residence was occupied by the Defendant and Reanne Gaston. The deputy was dispatched pursuant to a domestic call.

3.      Upon arriving at the scene, the deputy encountered Ms. Gaston and her 9 year old son.  They were both very upset.  This was around 6:00 p.m. in the evening and it was still light since it was during the Summer.  Ms. Gaston and her son were outside the residence.

4.      Ms. Gaston told the deputy that she had been texting a co-worker over her cell telephone.  The co-worker was telling her that he was sorry that Ms. Gaston was having a difficult time at home concerning some incident.  Ms. Gaston was texting the co-worker, telling the co-worker that it was alright and that her relationship with this Defendant had been deteriorating over the past five months.

5.      Ms. Gaston was texting this male co-worker on the back porch.  Apparently the Defendant, who was inside the residence, could see what she was doing through a window of the home.  Ms. Gaston told the deputy that the Defendant, her boyfriend, came out, lunged at her and attempted to grab the cell phone from her.  He was angry.  Deputy Blay-Raffo identified the Defendant in open court as the individual she knew to have been involved in this altercation with Ms. Gaston and whom the deputy later arrested on that date.

6.      Ms. Gaston told the deputy that their fighting moved from the porch out into the back yard.  The Defendant purportedly threw Ms. Gaston to the ground.  Ms. Gaston scratched the Defendant during the fight.   The Defendant then left and went to Ms. Gaston's parents residence which is a short distance away.  She then told the deputy that she used her 9 year old son's cell phone to call 9-1-1.  This was because the Defendant had taken Ms. Gaston's cell phone from the scene.   The deputy observed dirt on Ms.

2

Gaston's knees and red marks.  However, she could not testify as to how these ended up on Ms. Gaston since she was not at the scene when the argument took place.

7.      Ms. Gaston also told the deputy that the Defendant had been drinking since 2:00 o'clock that afternoon and that she had poured out two bottles of alcohol in the residence and that the Defendant was upset.

8.      Ms. Gaston's 9 year old son saw the argument and told the deputy that the Defendant threw Ms. Gaston to the ground and kicked her.

9.      The deputy then talked with the Defendant.  He said that he took the cell phone but did not hurt Ms. Gaston.  He said he gave the cell phone to her father because he thought that Ms. Gaston was "cheating on him."  The Defendant was arrested at the scene.

10.     Government's Exhibit No. 3 admitted into evidence is a copy of the Offense Report prepared by the deputy.  Government's Exhibit No. 4 admitted into evidence is a photo of the back porch area where Ms. Gaston was texting the male co-worker. Government's Exhibit No. 5 admitted into evidence is a photograph of the back yard area where Ms. Gaston fell.  Government's Exhibit No. 6 admitted into evidence at the hearing is a photograph of the scratches on the Defendant's body.  Government's Exhibit No. 7 admitted into evidence is a photograph of Ms. Gaston's leg with red marks on it.  Finally, Government's Exhibit No. 8 is a copy of Ms. Gaston's statement in regards to this matter.

11.     The deputy testified that she could smell alcohol on the Defendant, but he did not appear to be intoxicated nor did he have any slurred speech.  She did not smell any alcohol on Ms. Gaston and Ms. Gaston did not act as though she was under the influence

3

of alcohol either.  The deputy recalls Ms. Gaston saying that she called 9-1-1 and not her son.

12.     Government's Exhibit No. 1 is a recording of the 9-1-1 call.  This exhibit was admitted into evidence without objection and both parties advised the Court that it could listen to the exhibit after the hearing.  Government's Exhibit No. 2 admitted into evidence at the hearing is a Judgment and Sentence setting certain conditions of supervised release in respect to this Defendant.

_____

13.     The next witness called by the government was Reanne Gaston.  She testified that the Defendant, who she identified in open court as her ex-boyfriend, was involved in a domestic dispute with her on June 21, 2016 at the residence they shared in Seminole County.  She said that her son actually dialed 9-1-1 and she took the phone from him and talked to the 9-1-1 dispatcher.

14.     Ms. Gaston testified that when she got home from work she went outside on the back porch and sat in a chair to text the male co-worker about her being upset at work.  The Defendant then came out and tried to take her phone away from her.  She tussled with the Defendant to keep her phone.  The confrontation then went into the back yard area.  She eventually let go of the phone and fell to the ground.  She testified that based upon the pressure she was using to hold the phone and when the phone was taken away from her, she fell.  She did not testify that the Defendant pushed her down nor did she testify that he kicked her as her 9 year old son purportedly told the deputy.  Ms. Gaston testified that the Defendant was grabbing her wrist trying to get the telephone away.  Other than

4

that, he did not strike her, kick her or punch her, according to her testimony.  Once she let go of the phone she simply "hit the dirt" according to her testimony.

15.    Ms. Gaston testified that she told her son to go tell her parents what was happening.  Her parents live just a few houses away.  The Defendant ran into their home and locked himself in the bedroom.  He came out shortly thereafter and told her he was going to her parents' home to show them "what a whore you are."  The Defendant then left with her cell phone.

16.    Ms. Gaston's son then returned to the home and he had dialed 9-1-1.  He was crying.  The parents were there yelling.  Ms. Gaston grabbed the phone from her 9 year old son and "talked with the cops."

17.    Ms. Gaston testified that she has a prior DUI conviction.  She believes she was convicted in late 2015 and is still on probation.  She is not to consume any alcohol.  She has a prior conviction for having a false identification back in 2002.  She was 18 years old at that time and possessed a friend's driver's license as a false identification.

18.    Ms. Gaston testified she has known the Defendant almost two years.  They began living together in November of 2015.  Her name is on the lease for the property.  She pays the power bills.  Apparently the power bill and other bills coming to the home are not in her name.  She has been late on the lease and paying the power bills according to cross-examination.

19.    She and the Defendant have talked, off and on, about getting married during the period of their relationship.  She also recalled that there was a traffic ticket that she did not pay on time and had to pay a fine for that.  She was previously married and divorced in 2009.

5

20.    She apparently called the police this past weekend because someone who came to get the car that she was buying went through her home as opposed to going into the garage to get the car.  The police were called since that person was not authorized to be in the house.

21.    On the date in question, Ms. Gaston believes the Defendant had been to the dog track.  She testified that he went to the dog track every day after work.  She testified that the Defendant had been drinking at the house.  She did not buy alcohol nor put alcohol in the house.  When asked how long it had been since she has had a drink, she said "quite a while."  She did admit to having a cocktail at dinner for the Defendant's birthday celebration approximately three weeks prior to this incident.

22.    On cross-examination, she testified that in May of 2016 she went to a Happy Hour after work, but she stated that she did not have any drinks there.  She did fall down on that occasion and ended up in a hospital that date.  While she said she thought it was May, later during the testimony she said it may have been June.  She purportedly claimed that someone had put something in her drink, but she stated that she was not drinking alcohol at the "Happy Hour."

23.    Ms. Gaston admitted on cross-examination that she had drafted an e-mail to Chief Judge Moore regarding this case saying that she did not want anything to happen to the Defendant.  She also appeared before a state judge in Seminole County and told that judge that she was not "scared of the Defendant" and that alcohol was not an issue with the Defendant.  This testimony can be found in Defendant's Exhibit No. 1 admitted into evidence at the hearing which is a transcript of that hearing which took place before Judge Dekleva of the County Court of Seminole County of Florida on August 19, 2016.  Counsel

for the government announced that he did not have any objection to the admission of that exhibit when this Court asked at the outset of this evidentiary hearing.

24.     One thing the Court wishes to point out to the District Court was at the end of cross-examination, counsel for the Defendant, in attempting to impeach Ms. Gaston, asked her if it was true that she liked Tequila.  Ms. Gaston testified that she did not like Tequila since it made her sick.  She offered, though, that she did like Tequila in Margaritas.  This is someone who has a recent DUI conviction, is on probation, and at some point claimed that the Defendant had an alcohol problem.  It simply goes to her credibility in this Court's view in regards to her entire recollection of the events which took place.

25.     The government then rested.  Counsel for the Defendant announced that he did not have any evidence or witnesses to call.  At that time, this Court announced that based upon the suspect credibility of Ms. Gaston, this Court was ruling from the bench that it would recommend to Chief Judge Moore that the Defendant be found to have not violated his supervised release in respect to the allegation in the Petition.  This Court stated that it would put its Report and Recommendation in written form and that the final decision in this regard would be up to Chief Judge Moore.

## ANALYSIS

26.     This Court has considered all of the evidence submitted, being the sworn testimony and exhibits, as well as arguments of counsel.  The standard of proof in violations of supervised release is by a preponderance of the evidence standard and not by a beyond a reasonable doubt standard.  Revocation of supervised release is treated as part of the penalty phase for the initial offense involved.  The violative conduct need not

be criminal and the defendant need only be found by a judge under a preponderance of the evidence standard. United States v. Cunningham, 607 F.3d 1264 (11th Cir. 2010).

27.    As stated by this Court on the record, this appears to be a domestic incident which years ago would be referred to as an affray under Florida law. In such an instance, there is a mutual disagreement or struggle between two parties and it is not able to be determined who exactly was the initiator of the confrontation and/or the wrongdoer.

28.    This Court does not question the credibility of Deputy Blay-Raffo. As she stated many times during her testimony, she was not there when these incidents allegedly took place. She could only relate what Ms. Gaston, her son, and the Defendant were relating to her. However, this Court finds Ms. Gaston to not be entirely credible.

29.    Ms. Gaston denies the Defendant striking her or kicking her in any way. The only place that he touched her, according to her testimony, was her hand/wrist area trying to get the cell phone from her. He did not push her down. She testified that she fell to the ground when she released pressure on the cell phone. The Defendant left with the cell phone.

30.    Ms. Gaston denies drinking, but feels it is alright to attend Happy Hour at a local establishment after work. This Court is not questioning her doing that nor the morality of doing that. However, she is an individual on probation for a DUI and during that probation decides that it is a good decision to attend Happy Hour after work where people are consuming alcoholic beverages. At that Happy Hour, she denies drinking alcoholic beverages, but falls and injures herself to such a degree that she is in the hospital overnight. There was no testimony as to the extent of her injuries nor what those injuries were.

8

31.    This Court's recommendation has nothing to do with the presentation of the government's case. The government is "stuck with" the witnesses that it has and the facts of each case. AUSA Gyires did the best job that he could in presenting this matter. Also, U. S. Probation Officer Grice had no alternative but to file a Petition for Action Concerning Alleged Violations of Supervised Release since the Defendant was arrested for this offense in Seminole County. This Court simply finds that the credibility of the only real witness to this incident is highly questionable.

32.    Ms. Gaston has recently testified before the state judge that she is not afraid of the Defendant and that he does not have an alcohol problem in spite of the testimony she gives concerning this particular incident. She has also requested that the state authorities not prosecute the Defendant in regards to this incident. She has also apparently drafted an e-mail to Chief Judge Moore requesting that nothing happen to the Defendant in respect to this incident. Further, her testimony is that the Defendant only touched her about her hand/wrist in attempting to get the cell phone from her. She denies that he pushed her down, kicked her, or touched her in any other place on her body. She pointed out that the redness depicted in the photographs admitted into evidence were simply abrasions and "did not bruise."

33.    This Court views this incident very seriously. However, at the same time, this does not rise to the level of conduct which should result in the Defendant being sent back to prison. This is so even under the preponderance of the evidence standard. This Court views this incident and Ms. Gaston's recollection of it to be questionable at best. It appears to this Court to have been a mutual tussle over a telephone which should not rise to the level of a criminal battery charge, even a mere misdemeanor. This Court was able to

9

observe the demeanor and testimony of Ms. Gaston in open court and bases its credibility determinations both on those observations and the facts to which she testified vis-a-vis the evidence that Deputy Blay-Raffo was given at the scene at the time of the alleged incident.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have not violated his supervised release specifically in respect to committing a battery upon Ms. Gaston as alleged in the Petition and that the Petition be dismissed.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this _____ day of September, 2016, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Marton Gyires
Hubert Fletcher, Esq.
U. S. Probation
U. S. Marshal

10